# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* LUAY D.F. AILABOUNI, M.D., STATE OF ILLINOIS *ex rel.* LUAY D.F. AILABOUNI, M.D., and LUAY D.F. AILABOUNI, M.D., individually,<br><br>Plaintiffs,<br><br>v.<br><br>ADVOCATE CHRIST MEDICAL CENTER, *et al.*,<br><br>Defendants. | Case No. 13-cv-1826<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Relator/Plaintiff Luay Ailabouni filed this *qui tam* action under the False Claims Act (FCA), 31 U.S.C. § 3729, *et seq.*, and the Illinois False Claims Act (IFCA), 740 ILCS 175/1, *et seq.*, on behalf of the United States and the State of Illinois. Relator sues Advocate Christ Medical Center (ACMC); Advocate Medical Group (AMG); and William Hopkins, M.D. (together, the Advocate Defendants). Relator also sues Cardiothoracic & Vascular Surgical Associates, S.C. (CVSA); Dean Govostis, M.D.; Wade Kang, M.D.; and Sanjeev Pradhan, M.D. (together, the CVSA Defendants).

Relator alleges that Defendants defrauded Medicare and Medicaid in various ways through their activities in a teaching hospital. Relator filed his second amended complaint in December 2017. [92]. Defendants moved to dismiss that complaint with prejudice. [97, 99]. For the reasons explained below, this Court partially grants and partially denies the motions.

1

This Court presumes familiarity with, and incorporates by reference, its prior opinion dismissing Relator's first amended complaint [87]. Abbreviations in this opinion have the same meaning as in the prior opinion. Because Relator's foundational allegations (about, among other things, Medicare's relationship with teaching hospitals and the residency program operating at ACMC) remain unchanged from his first amended complaint, this opinion does not include a new background section. Likewise, this opinion does not repeat in detail the required elements of each statute at issue. Instead, this Court discusses Relator's new allegations against each individual defendant within the analysis section.

I. **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not

suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

FCA and IFCA claims must meet Rule 9(b)'s heightened pleading requirements. *See United States ex rel. Gross v. AIDS Research Alliance–Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) demands that claimants alleging fraud "state with particularity the circumstances constituting fraud." Particularity resembles a reporter's hook: a plaintiff "ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted). Ultimately, a plaintiff must always inject "precision and some measure of substantiation" into fraud allegations. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted).

## II. Analysis

The FCA and IFCA each prohibit: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim to the government for payment; and (2) knowingly making or using, or causing to be made or used, a false record or statement material to a false or fraudulent claim to the government. *See* [87] at 10–11 (citing 31 U.S.C. § 3729; 740 ILCS 175/3).

3

Relator alleges violations of both prohibitions. Here, Defendants argue that Relator's new allegations fail to satisfy Rule 9(b)'s particularity requirements and fail to state claims under Rule 12(b)(6).

A.  **The CVSA Physicians' Improper Exclusion of Residents**

Relator alleges that:

- Govostis (as the primary surgeon) and Kang (as the assistant surgeon) performed an "Endoleak" surgery on a Medicare recipient at ACMC in December 2010 and falsely reported that no qualified surgical resident was available during the procedure even though Relator, then a fourth-year General Surgery resident, observed the whole procedure. Relator alleges that he should have assisted because an Endoleak "is not a particularly complex operation," he previously assisted in more complex surgeries, and within weeks of the alleged exclusion, he assisted two different attending physicians in performing Endoleaks. [92] ¶¶ 85–91.

- Pradhan (as the primary surgeon) and Govostis (as the assistant surgeon) performed a subclavian axillary artery aneurysm repair on a Medicare recipient at ACMC in January 2012 and falsely reported that no qualified surgical resident was available during the procedure even though Dr. Saied, then in his fifth and final year as a General Surgery resident, observed the whole procedure. Relator alleges that Saied should have assisted because the surgery was not particularly complex and Saied previously assisted in more complex procedures, including a complicated aneurysm repair 18 months before this procedure. *Id.* ¶¶ 98–105.

- Pradhan (as the primary surgeon) and Govostis (as the assistant surgeon) performed an abdominal aortic aneurysm repair on a Medicare or Medicaid recipient at ACMC in January 2012 and falsely reported that no qualified surgical resident was available during the procedure even though Saied observed the whole procedure. Relator again alleges that Saied should have assisted because the surgery was routine and Saied "had previously and immediately thereafter assisted in surgeries of the same and higher complexity." *Id.* ¶¶ 113–20.

These amended allegations satisfy Rule 9(b). In contrast to his first amended complaint, Relator now provides the "who, what, when, where, and how of the

4

fraud." *Pirelli*, 631 F.3d at 441–42 (internal quotation marks omitted). He explains which procedures the surgeons performed, why those procedures did not fall within the conditions specified in 42 C.F.R. § 415.190(c),[1] and why the available residents had the qualifications to assist.

The CVSA Defendants argue that Relator fails to show that they submitted any false claims to Medicare. [100] at 13–15. Relator worked as a resident physician, not a coder in CVSA's billing department. Given Relator's position—one that "does not appear to include regular access to medical bills"—this Court finds no basis to require that he "plead more facts pertaining to the billing process." *Presser*, 836 F.3d at 778. In light of the record here, this Court can also reasonably infer that Govostis, Kang, and Pradhan would not have performed surgeries without CVSA submitting any claims for those procedures to Medicare for the patients that Relator identified. *See United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009).

The CVSA Defendants further argue that Relator's allegations cannot survive because they merely demonstrate his subjective disagreement with the attending physicians' medical judgments about residents' ability to assist during surgery. [10] at 5–7. Such medical judgments, they say, form "an insufficient basis for a fraud claim." *Id.* at 6. That argument carries little weight based upon the record. Here Relator provides enough medical context to state a facially plausible claim that the

---

[1] Although Relator does not explicitly rule out each of the five possible conditions, he does not have to do so at this point in the proceedings. This Court can reasonably infer, for example, that because the CVSA Defendants all practiced as vascular surgeons, the procedures did not involve "a medical condition that requires the presence of, and active care by, a physician *of another specialty* during surgery." § 415.190(c)(3) (emphasis added).

5

attending physicians did not exclude residents based upon medical judgment, but rather so they could make more money for CVSA. *Cf. Presser*, 836 F.3d at 779 ("Presser provides no medical, technical, or scientific context" to explain "why Acacia's alleged actions amount to unnecessary care forbidden by the statute.").

Finally, the CVSA Defendants argue that Relator fails to plead sufficient facts about the patients' health to demonstrate that "using a resident assistant would have been *indisputably* appropriate for the specific surgeries." [100] at 7 (emphasis added). Relator does not need to prove anything "indisputably" to survive a motion to dismiss; he only needs to state a facially plausible claim that allows this Court to draw a reasonable inference of misconduct. *See Iqbal*, 556 U.S. at 678. He does so. Further factual development at summary judgment might reveal that Govostis, Kang, and Pradhan properly excluded residents from the procedures because, for example, the patients had unusual risk factors that made the surgeries more complex. At this stage, however, the alleged claims survive because the new details inject "precision and some measure of substantiation" into Relator's fraud allegations. *Presser*, 836 F.3d at 776.

The CVSA Defendants make no standalone argument for dismissing CVSA itself. *See generally* [100]. Thus, CVSA remains in the case because, as an Illinois professional corporation, it faces liability for misconduct that its officers, shareholders, or employees committed while "engaged on behalf of the corporation in the rendering of professional services." 805 ILCS 10/8.

Lastly, this Court dismisses the allegations about a surgery that Pradhan

6

and Govostis performed on a patient with private insurance, [92] ¶¶ 106–12, because FCA liability cannot arise from submitting claims to a private payer, 31 U.S.C. § 3729.

## B. Improper Use of Modifier 62

For the first time, Relator alleges that, in July and December 2010, Govostis, Kang, and Pradhan improperly performed surgeries together and then billed Medicare for co-surgeon services using modifier 62 when they should have used residents as assistant surgeons instead. [92] ¶¶ 92–97, 121–126. The CVSA Defendants argue, among other things, that these new claims are time-barred. This Court agrees.

The FCA and IFCA have six-year statutes of limitations, 31 U.S.C. § 3731(b)(1); 740 ILCS 175/5(b)(1), which expired for these claims in 2016. Relator makes no attempt in his response brief to argue that these claims relate back to his earlier complaints under Rule 15(c) (indeed, he does not defend the claims at all). *See generally* [105]. Accordingly, he waives any relation-back argument. *United States v. Cisneros*, 846 F.3d 972, 979 (7th Cir. 2017). Because Relator's previous complaints all focused upon billing requirements for assistant surgeons, not co-surgeons, this Court dismisses Relator's claims alleging the improper use of modifier 62 as time-barred.

## C. Hopkins' Improper Use of a PA

Relator claims that Hopkins improperly used a PA instead of a resident during four surgeries in October 2011. [92] ¶¶ 127–47. The Advocate Defendants

7

argue that these allegations fail to state a claim because Medicare's conditions of payment for assistant surgeons do not apply to PAs. [98] at 11. This Court agrees.[2]

The Social Security Act provides that Medicare will not pay for the services of an assistant at surgery in a teaching hospital, except under certain conditions, including "exceptional medical circumstances" and "such other circumstances as the Secretary determines by regulation." 42 U.S.C. § 1395u(b)(7)(D)(i). The Act defines "assistant at surgery" as "a physician who actively assists the physician in charge of a case in performing a surgical procedure." *Id.* § 1395u(b)(7)(D)(ii). Likewise, the implementing regulation identifies five conditions under which Medicare will pay for such assistants at surgery, and defines "assistant at surgery" as "a physician who actively assists the physician in charge of a case in performing a surgical procedure." § 415.190.

In contrast, the CMS Manual repeats the above definition of "assistant at surgery," but also explains that PAs can serve as assistants at surgery when "authorized to provide such services under State law." Ctrs. for Medicare & Medicaid Servs., Pub. 100-04, Medicare Claims Processing Manual Ch. 12, § 100.1.7A (2017). And the CMS Manual explicitly states:

> Procedures billed with the assistant-at-surgery physician modifiers -80, -81, -82, or the AS modifier for physician assistants, nurse practitioners and clinical nurse specialists, are subject to the assistant-at-surgery policy. Accordingly, pay claims for procedures with these modifiers only if the services of an assistant-at-surgery are authorized.

*Id.* § 20.4.3. Relator points out that Illinois law allows PAs to act as assistant

---

[2] The Advocate Defendants also raised this argument during briefing on their earlier motion to dismiss, [60] at 24, but this Court granted the motion for a different reason, [87] at 15–16.

surgeons, [105] at 16 (citing 225 ILCS 95/7.7), and argues that the CMS Manual does not conflict with federal law, but rather explains the applicable statute and regulation, *id.* at 16–18.

Under certain circumstance, courts can defer to an agency's interpretation of its own *ambiguous* regulations. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012); *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 207 (2011) (When "an agency's regulations construing a statute are ambiguous, we next turn" to the agency's "subsequent interpretation of those regulations."). But agency interpretations (such as the CMS Manual) fail to warrant judicial deference when they interpret unambiguous regulations. From a more foundational standpoint, if a statute clearly expresses Congress' intent, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843–44 (1984).

Here, § 1395u(b)(7)(D)(ii) and section 415.190(b) plainly and unambiguously confine the scope of Medicare's assistant-at-surgery payment restrictions to physicians. Thus, this Court cannot defer to the more expansive view that the CMS Manual advances. *See Chevron*, 467 U.S. at 843–44; *Chase Bank*, 562 U.S. at 207. Because the payment restrictions that Relator accuses Hopkins of violating do not apply to assistant-at-surgery services provided by PAs, this Court grants the motion to dismiss Hopkins with prejudice. Accordingly, this Court also grants the motion to dismiss AMG with prejudice, because it cannot face liability for submitting false claims if Hopkins did not engage in any underlying misconduct that rises to the

9

level of an FCA violation.

### D. GME Fraud Through Fraudulent MCRS

Relator alleges that ACMC defrauded Medicare out of GME payments by submitting MCRs that reflected fraudulent billing practices. [92] ¶¶ 162–76. As this Court explained in its previous opinion, Relator adequately pleads that ACMC submitted MCRs to CMS that certified compliance with Medicare statutes and regulations. [87] at 23 (citing *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 838–39 (7th Cir. 2013) (at the outset of litigation, a plausible inference of a false submission can satisfy Rule 9(b) and a relator does not need to produce the false document)).

Previously, Relator failed to plead that ACMC submitted *fraudulent* MCRs because he failed to allege any underlying physician misconduct with the requisite particularity. *Id.* Both sides say that Relator's allegations regarding false MCRs rise or fall with his allegations regarding the submission of false claims for assistant-at-surgery services. *See* [105] at 23; [106] at 15. Accordingly, Relator sufficiently pleads that ACMC knowingly submitted false cost reports in violation of the FCA, because here he: (1) adequately pleads FCA violations by the CVSA physicians; (2) alleges that MCRs reported on ACMC's total costs for "providing services to all patients" (including those that the CVSA physicians treated at ACMC), [92] ¶ 167; and (3) alleges—with specific examples—that higher-ups at ACMC knew of the CVSA misconduct, *id.* ¶¶ 148–61.

Neither side mentions materiality. For Relator's implied-certification theory

to proceed, he must also allege that the misrepresentations were material, meaning that—if known—they likely would have influenced the government's decisions to make GME payments to ACMC. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003–04 (2016) (identifying possible methods of demonstrating materiality), *remanded to United States ex rel. Escobar v. Universal Health Servs.*, 842 F.3d 103 (1st Cir. 2016) (*Escobar II*). Here, Relator adequately pleads materiality because he alleges (and section 415.190 explicitly says) that Medicare will not pay for assistant-at-surgery services that do not meet section 415.190(c)'s conditions. [92] ¶ 38. He also alleges that ACMC's fraud "undermined" the essence of the relationship between Medicare and teaching hospitals, *id.* ¶ 176, and that Medicare would not have made the GME payments if it knew about the fraud, *id.* ¶ 181. At this stage, that suffices for materiality. *See United States ex rel. O'Donnell v. Am. at Home Healthcare & Nursing Servs., Ltd.*, No. 14-cv-1098, 2017 WL 2653070, at *8 (N.D. Ill. June 20, 2017) (citing *Escobar II*, 842 F.3d at 110).

## III. Conclusion

This Court partially grants and partially denies Defendants' motions to dismiss [97, 99]. This Court grants the motions with prejudice as to allegations involving the improper use of modifier 62 and as to Hopkins and AMG. This Court denies the motions as to ACMC and the CVSA Defendants. The status hearing set for April 25, 2018, at 9:45 a.m. in Courtroom 1203 stands. The parties shall come prepared to set case management dates.

Dated: April 23, 2018

Entered:

_____
John Robert Blakey
United States District Judge