# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* LUAY D.F. AILABOUNI, M.D., STATE OF ILLINOIS *ex rel.* LUAY D.F. AILABOUNI, M.D., and LUAY D.F. AILABOUNI, M.D., individually, <br><br> Plaintiffs, <br><br> v. <br><br> ADVOCATE CHRIST MEDICAL CENTER, *et al.*, <br><br> Defendants. | Case No. 13-cv-1826 <br><br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Relator/Plaintiff Luay Ailabouni filed this *qui tam* action under the False Claims Act (FCA) and the Illinois False Claims Act (IFCA) on behalf of the United States and the State of Illinois. Relator sued, among others, Advocate Christ Medical Center (ACMC); Cardiothoracic & Vascular Surgical Associates, S.C. (CVSA); and individual surgeons practicing under the CVSA group. Relator alleges that Defendants fraudulently obtained payments from Medicare and Medicaid for their work in a teaching hospital.

After Relator filed his second amended complaint in December 2017, [92], Defendants moved to dismiss that complaint with prejudice, [97, 99]. This Court partially granted the motions to dismiss, but denied the motions as to ACMC and the CVSA Defendants. [110]. ACMC moved for reconsideration of the denial of its motion to dismiss. [115]. For the reasons explained below, this Court grants ACMC's motion for reconsideration. This Court presumes familiarity with, and

1

incorporates by reference to the degree necessary, its prior opinions addressing Relator's first and second amended complaints [87, 110], and thus, this Court omits a background section from this opinion. Abbreviations in this opinion have the same meaning as abbreviations in the prior opinions.

**I.     Legal Standard**

To succeed on a motion to reconsider, the moving party must show "a manifest error of law or fact or present newly discovered evidence." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011)). This exacting standard requires the moving party to do more than rehash old arguments or express disappointment in the court's prior ruling. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

**II.    Analysis**

In its prior opinion, this Court held that Relator stated a viable claim against ACMC because he: (1) adequately pled FCA violations by CVSA surgeons; (2) alleged that MCRs reported on ACMC's total costs for "providing services to all patients" (including those that the CVSA physicians treated at ACMC); and (3) alleged—with specific examples—that higher-ups at ACMC knew of CVSA's misconduct, but ACMC certified the MCRs anyway. [110] at 10 (citations omitted). ACMC now argues that this Court must reconsider the denial of its motion to dismiss because, among other reasons, ACMC's MCR certifications did not extend to services provided by CVSA surgeons, and ACMC could not face FCA liability for another party's fraudulent billing practices. [116] at 5–8. In other words, the prior

2

denial of the motion to dismiss actually rested upon an error of fact (which was ultimately confirmed when Relator clarified the scope of the complaint's allegations during the June 26, 2018 motion hearing on ACMC's motion to reconsider).

In its motion for reconsideration, ACMC bases its request upon a purported manifest error of law, and then cites numerous regulations not mentioned in the complaint (along with certain paragraphs of the complaint), arguing that those sources make it "abundantly clear that the certifications made in ACMC's MCRs solely cover and relate to the hospital based services it renders, and does not [sic] extend to CVSA's Part B billings." [116] at 7–8 (citing 42 C.F.R. §§ 414, 424). Not so. The complaint contains the following allegations:

- CVSA surgeons participated in ACMC's teaching program and performed surgeries at the hospital, [92] ¶¶ 27–28;

- Through MCRs, ACMC obtains GME funding, which is "indivisible from patient services," *id.* ¶ 67;

- "The MCR records each institution's total costs and charges associated with providing services to *all patients*," *id.* ¶ 167 (emphasis added);

- Each hospital submitting an MCR to Medicare certifies that "the services identified in this cost report were provided in compliance" with applicable laws and regulations, *id.* ¶ 168;

- ACMC knew about CVSA's fraudulent billing, but still certified its MCRs, *id.* ¶ 169.

The phrase "Part B" does not appear anywhere in the complaint. So, given the absence of any allegations that CVSA's billings fall solely under Part B—and thus outside the purview of MCRs—this Court reasonably construed the complaint to mean that ACMC's MCRs certified compliance with the law for all services

3

provided in the hospital, including those that CVSA surgeons provided. Far from making it "abundantly clear" that ACMC does not certify CVSA's billings, the complaint alleges that the MCRs included billing data for services for *all patients*. [92] ¶ 167. Thus, this Court drew the then-plausible inference that "all patients" included patients treated by CVSA surgeons in the hospital, meaning that ACMC's certification encompassed CVSA's services. [110] at 10.

Accordingly, at first, ACMC's argument for reconsideration appeared to be a premature argument for summary judgment on the basis that Relator could never prove the complaint's allegations that ACMC certified CVSA's services through the MCRs. *See generally* [116]. During oral argument, however, Relator clarified in open court that the complaint's allegations rest not upon the fact that ACMC fraudulently certifies CVSA's billings and services as legally compliant, but only upon the fact that ACMC certifies its MCRs as compliant despite violating a nebulously defined obligation to provide a quality residency program while receiving GME funding from Medicare. Given that concession and clarification, this Court's prior ruling on ACMC's motion to dismiss cannot stand, because this Court misinterpreted the nature of Relator's factual allegations in finding that Relator stated a claim against ACMC.

The clarification leaves Relator with, at best, allegations that ACMC knew about some of CVSA's allegedly fraudulent practices and thus should not have sought GME funding from Medicare, even though the MCRs (through which ACMC obtained GME funding) made no false representations about CVSA's services. But

4

"mere knowledge of a fraud" alone cannot "sustain an FCA cause of action," without more, such as the affirmative certification that this Court previously interpreted the complaint to claim (which apparently Relator has not alleged and cannot allege). *See United States ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp. 3d 793, 802 (N.D. Ill. 2015). For example, to state a claim, Relator would have to be able to allege that ACMC took an "active role" in submitting false claims or material fraudulent documents to the government. *Id.* (citing *United States ex rel. Gross v. AIDS Research Alliance–Chi.*, 415 F.3d 601, 604 (7th Cir. 2005)). Relator, however, cannot do so. At this point in the proceedings, Relator lacks the factual basis to go forward and has failed to allege a viable claim on his third attempt, so this Court dismisses ACMC with prejudice.

### III. Conclusion

This Court grants ACMC's motion to reconsider the prior ruling [115] and dismisses ACMC with prejudice.

Dated: July 3, 2018

Entered:

_____
John Robert Blakey
United States District Judge

5